UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL M.[1],

      Plaintiff,      Civil Action No. 25-10911

v.            David R. Grand
            United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)

Plaintiff Paul M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").  Both parties have filed summary judgment motions. (ECF Nos. 11, 13).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff was not disabled under the Act during the relevant period is not supported by substantial evidence.  Thus, the Commissioner's Motion for Summary Judgment **(ECF No. 13)** will be **DENIED**; Plaintiff's Motion for Summary Judgment **(ECF No. 11)** will be

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c).  (ECF No. 9).

**GRANTED**; and this case will be **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

### A.    Background

Plaintiff was between 46 and 49 years old during the relevant time period[3] and at 5'11" tall weighed between 175 and 230 pounds.  (PageID.71, 271, 276).[4]  He completed tenth grade but had no further education.  (PageID.277).  Plaintiff worked as a truck driver from 1992 until January 2016, and then again from September 2016 to December 2016, when he stopped working because of his medical problems.  (PageID.276-77, 284).  He now alleges disability primarily as a result of heart attacks, an aortic aneurysm, chronic kidney disease, gout, shoulder pain, depression, and anxiety.  (PageID.74, 82, 86, 276).

After Plaintiff's application for DIB was denied at the initial level on July 11, 2022 (PageID.144-48), and on reconsideration on August 23, 2022 (PageID.153-56), he timely requested an administrative hearing, which was held on September 27, 2023, before ALJ Sarah Smisek (PageID.66-91).  Plaintiff, who was represented by attorney Dennis Little, testified at the hearing, as did vocational expert ("VE") Michele Robb.  (*Id.*).  On January 23, 2024, the ALJ issued a written decision finding that Plaintiff was not disabled under

---

[3] Plaintiff previously filed an application for DIB on January 10, 2017.  (PageID.123).  That claim was denied at the initial level.  (*Id.*).  On November 30, 2018, ALJ John Dodson issued a written decision denying that application.  (PageID.123-33).  ALJ Sarah Smisek, who adjudicated the instant claim, determined that "new and material evidence" exists that affects the original findings and disability determination, and there were regulatory changes as to how musculoskeletal impairments are evaluated following the 2018 decision.  (PageID.32-33).  Thus, the period at issue begins on December 1, 2018, the date following the issuance of ALJ Dodson's decision, and runs through December 31, 2021, Plaintiff's date last insured.  (PageID.35).

[4] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

the Act between his alleged onset date (December 1, 2018) and his date last insured (December 31, 2021).  (PageID.32-42).  On January 31, 2025, the Appeals Council denied review.  (PageID.23-27).  Plaintiff timely filed for judicial review of the final decision on March 31, 2025.  (ECF No. 1).

**B.      The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

> claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act between December 1, 2018, and December 31, 2021. At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during that period. (PageID.35). At Step Two, the ALJ found that he had the severe impairments of chronic kidney disease, depression, aneurysm, hypertension, carpal tunnel syndrome, and ischemia. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal a listing. (*Id.*).

The ALJ then assessed Plaintiff's RFC, concluding that, during the relevant time period, he was capable of performing sedentary work, with the following additional limitations: could not work with hazards, vibration, or pulmonary irritants; and was limited to unskilled work involving simple, routine, and repetitive tasks. (PageID.37).

At Step Four, the ALJ found that, during the relevant time period, Plaintiff was not able to perform any of his past relevant work. (PageID.40). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical

questions, that Plaintiff was capable of performing the sedentary jobs of order clerk (14,000 jobs in the national economy), hand packer (22,000 jobs), and inspector (12,000 jobs). (PageID.41).  As a result, the ALJ concluded that, during the relevant time period, Plaintiff was not disabled under the Act.  (*Id.*).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence …   is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*,

499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

As set forth above, the ALJ found that Plaintiff had the severe impairments of chronic kidney disease, depression, aneurysm, hypertension, carpal tunnel syndrome, and ischemia.  (PageID.35).  Before this Court, however, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence regarding his shoulder impairments.[5]  (ECF No. 11, PageID.1389-97).  For the reasons set forth below, the Court agrees.

---

[5] Plaintiff also argues that the ALJ erred in evaluating his subjective complaints.  (ECF No. 11, PageID.1397-1400).  Because the Court is remanding on other grounds, it need not evaluate the merits of this argument in detail.  On remand, however, the ALJ should give full and fair consideration to this issue.

### 1.   Plaintiff's Medical Treatment[6]

On April 2, 2018, Plaintiff underwent x-rays of his left shoulder, which demonstrated no acute fracture, no evidence of glenohumeral dislocation, unremarkable soft tissues, and no erosive changes. (PageID.524). He was diagnosed with tendinitis of the left rotator cuff. (*Id.*).

On February 10, 2021, after Plaintiff complained of chronic bilateral shoulder pain, x-rays of both shoulders were performed. (PageID.432-34). His right shoulder x-ray showed no acute displaced fracture, dislocation, or bone destruction, but some accessory ossification center at right acromioclavicular joint. (PageID.433). His left shoulder x-ray showed no significant abnormality. (PageID.434). After reviewing these x-rays, Plaintiff's physician, Tyler Drewry, M.D., diagnosed him with rotator cuff tear arthropathy of both shoulders and administered injections. (PageID.431).

On February 4, 2022 – approximately one month after Plaintiff's date last insured of December 31, 2021 – an MRI of Plaintiff's right shoulder was performed after he complained of "[r]ight shoulder pain for 9 months." (PageID.421). In ordering the MRI, Dr. Drewry noted that Plaintiff had significant weakness on rotator cuff testing, was dropping items, x-rays had showed elevation of the humeral head and rotator cuff arthropathy, and Plaintiff had tried an injection with "no great relief." (PageID.420). The MRI of Plaintiff's right shoulder showed full-thickness tears of a majority of the subscapularis and anteriormost fibers of the supraspinatus; high-grade articular surface

---

[6] Because Plaintiff's arguments before this Court center on his shoulder impairments, the Court will focus its discussion on evidence relevant to those conditions.

delamination of the remaining supraspinatus and infraspinatus with intrasubstance extension of tear of the infraspinatus, involving nearly the entire depth of the tendons; medial dislocation of the long head biceps tendon into the joint with longitudinal split tear extending from the bicipital anchor into the vertical segment; linear and/or degenerative tearing of the anterosuperior through anteroinferior labrum as well as a separate tear involving the posterior superior labrum; some glenoid cartilage loss with moderate glenohumeral joint effusion and bursal distention; acromioclavicular osteoarthritis and os acromiale; and underlying subacromial/subdeltoid bursitis.  (PageID.421-22).

On February 10, 2022, Plaintiff returned to see Dr. Drewry, who – after reviewing the results of the MRI – prescribed Norco and referred him to orthopedic surgery. (PageID.419).  Three days later, Dr. Drewry administered additional injections to both of Plaintiff's shoulders.  (PageID.392-93).  Plaintiff was scheduled for right shoulder surgery on March 23, 2022, but he was not cleared for surgery from a cardiac perspective after an abnormal nuclear stress test.  (PageID.814).  This was still true at doctors' visits in July, August, September, and October 2022, during which time Plaintiff continued to report bilateral shoulder pain and underwent injections.  (PageID.746-48, 770-72, 911-16, 993-95).  Indeed, by October 20, 2022, Dr. Drewry was advising Plaintiff that he likely needed bilateral reverse total shoulder arthroplasty.[7]  (PageID.916).

---

[7] An MRI of Plaintiff's left shoulder performed on October 17, 2022, showed near complete tear of the subscapularis tendon with complete tear and retraction of the supraspinatus and infraspinatus tendons with associated fatty infiltration of the rotator cuff musculature; a complete tear with retraction of the long head biceps tendon; mild glenohumeral and acromioclavicular osteoarthrosis with small glenohumeral effusion; and intramuscular and superficial edema along the deltoid. (PageID.1236).

2.      *The Medical Opinion Evidence*

On July 9, 2022, non-examining state agency consultant Susan Clifford, M.D. reviewed Plaintiff's medical records and opined that he had the following limitations: could occasionally lift/carry up to 10 pounds; frequently lift/carry up to 10 pounds; stand/walk for a total of 2 hours; sit for a total of about 6 hours; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; was limited to only occasional reaching laterally and overhead bilaterally; and had to avoid concentrated exposure to hazards.  (PageID.104-08).

Similarly, on August 22, 2022, non-examining state agency consultant Helene Jones, M.D. reviewed Plaintiff's medical records and opined that he had the following limitations: could occasionally lift/carry 10 pounds; frequently lift/carry 10 pounds; stand/walk 2 hours; sit for a total of about 6 hours; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; could only occasionally reach overhead and front/lateral bilaterally; and must avoid concentrated exposure to hazards.  (PageID.116-18).

3.      *The ALJ Erred in Evaluating the Medical Opinion Evidence*

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision.  20 C.F.R. § 404.1520c(b)(2).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ...

9

the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1).  As to

the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the

evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) ... will be."  20 C.F.R. § 404.1520c(c)(2).  "The

regulations require that the ALJ sufficiently articulate [her] reasoning for [her]

persuasiveness findings." *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL

992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.

Supp. 3d 900, 902 (E.D. Mich. 2021)).

As set forth above, the ALJ considered the evidence of record and found that,

between December 1, 2018, and December 31, 2021, Plaintiff had the RFC to perform

sedentary work, with certain additional limitations.  (PageID.37).   In reaching this

conclusion, the ALJ discussed the opinions of Drs. Clifford and Jones – which were

identical in all relevant respects – but found them only "somewhat persuasive."

(PageID.39).  Specifically, the ALJ found, in relevant part:

> Although the undersigned generally agrees as to sedentary exertion
> and environmental limitations, it appears these doctors considered the
> rotator cuff pathology to be severe despite it being many months after
> the expiration of the date last insured.  During the relevant period, the
> claimant did complain of bilateral shoulder pain, but diagnostic
> imaging of his shoulders was near-normal.   Additionally, his
> testimony was not indicative [of] any significant shoulder issues that
> would require more than sedentary limitations as described herein.

(*Id.*) (internal citations omitted).

Plaintiff now argues that the ALJ erred in not providing "a logical bridge between

the evidence and her conclusion regarding [Plaintiff's] shoulder impairment."  (ECF No.

11, PageID.1392).  It is true that "[w]hile the ALJ is not required to address every piece of evidence, [s]he must articulate some legitimate reason for [her] decision.  Most importantly [s]he must build an accurate and logical bridge from the evidence to [her] conclusion." *Molly H. v. Comm'r of Soc. Sec.*, No. 23-10940, 2024 WL 4172524, at *6 (E.D. Mich. Sept. 12, 2024) (internal quotations omitted).  Here, the Court agrees with Plaintiff that the ALJ's handling of Drs. Clifford's and Jones' opinion was flawed and, ultimately, not supported by substantial evidence.

As set forth above, after reviewing Plaintiff's medical records, the state agency physicians explained that reaching limitations were necessary due to his bilateral rotator cuff tears.  (PageID.104-08, 116-18).  According to the ALJ, although she "generally agree[ed] as to sedentary exertion and environmental limitations" the doctors imposed, the ALJ noted that "it appears these doctors considered the rotator cuff pathology to be severe despite it being many months after the expiration of the date last insured," and that while "[d]uring the relevant period, [Plaintiff] did complain of bilateral shoulder pain, [] diagnostic imaging of his shoulders was near-normal."  (PageID.39) (citing PageID.433, 434, 524).

It is true that x-rays taken of Plaintiff's left shoulder on April 2, 2018, were relatively benign, but they were performed because Plaintiff had been diagnosed with tendinitis of the left rotator cuff.  (PageID.524).  The other imaging records relied on by the ALJ were x-rays taken on February 10, 2021, *i.e.*, during the relevant period.  (PageID.433, 434).  While Plaintiff's left shoulder x-ray showed no significant abnormality, and his right shoulder x-ray showed no acute displaced fracture, dislocation,

or bone destruction, Plaintiff's right shoulder x-ray showed "accessory ossification center [] at the right acromioclavicular joint."[8]  (PageID.433-34).  After reviewing these x-rays, Dr. Drewry diagnosed Plaintiff with chronic pain of both shoulders and rotator cuff tear arthropathy of both shoulders and administered injections.  (PageID.431-32).

More concerning, however, is the ALJ's dismissal of Drs. Clifford's and Jones' opinions on the basis they "considered the rotator cuff pathology to be severe despite it being many months after the expiration of the date last insured."  (PageID.39).  In fact, the MRI of Plaintiff's right shoulder – which showed full-thickness tears of a majority of the subscapularis and anteriormost fibers of the supraspinatus; high-grade articular surface delamination of the remaining supraspinatus and infraspinatus with intrasubstance extension of tear of the infraspinatus, involving nearly the entire depth of the tendons; and medial dislocation of the long head biceps tendon into the joint with longitudinal split tear extending form the bicipital anchor into the vertical segment; linear and/or degenerative tearing of the anterosuperior through anteroinferior labrum as well as a separate tear involving the posterior superior labrum – was performed on *February 4, 2022*, *barely one month after Plaintiff's date last insured of December 31, 2021*.  (PageID.421-22).  Moreover, it was specifically noted that Plaintiff had tried injections with "no great relief," and that this MRI was performed after Plaintiff complained of "[r]ight shoulder pain for 9 months."  (PageID.421).  And, after reviewing the MRI results, Dr. Drewry prescribed

---

[8] An accessory ossification center at the right acromioclavicular joint, commonly known as an "os acromiale," is an unfused segment of the acromion bone, and is regarded as "one of the reasons for rotator cuff tears and shoulder impingement."  *See* http://pmc.ncbi.nlm.nih.gov/articles/PMC6819188/ (last accessed March 16, 2026).

Norco and referred Plaintiff to orthopedic surgery.  (PageID.419).

All of these facts suggest that Plaintiff's shoulder impairments were present and worsening during the relevant time period.  Indeed, both Dr. Clifford and Dr. Jones noted that "[w]ith [the] chronic and severe nature of [Plaintiff's] … shoulder arthropathies noted at evaluations in early February, 2022, it is reasonable [to conclude] that the described limitations were present at the end of December, 2021."[9]   (PageID.107-08; *see also* PageID.117).  The ALJ made no mention of Drs. Clifford's and Jones' conclusions in this regard.

Given all of these facts, it was improper for the ALJ to discount the only medical opinion evidence of record based on a flawed finding that Plaintiff did not experience severe and ongoing rotator cuff pathology until "many months after" the date last insured. *See Kinney v. Comm'r of Soc. Sec.*, No. 1:19-cv-604, 2020 WL 5626922, at *6 (W.D. Mich. Sept. 21, 2020) (ALJ erred in rejecting doctor's opinion, issued after date last insured, where it was based in part on the plaintiff's condition as it existed before the cutoff date); *Magic v. Colvin*, No. 14-12868, 2015 WL 5244414, at *5 (E.D. Mich. Sept. 7, 2015) ("Likewise, medical evidence after the date last insured is relevant only to the extent it indicates the claimant's condition prior to the date last insured."); *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) ("However, medical evidence that postdates the insured status date may be, and ought to be, considered, insofar as it bears on the claimant's condition prior to the expiration of insured status.").

---

[9] This is particularly true where there is no indication Plaintiff suffered a traumatic fall or other such injury between late December 2021 and February 2022.

In the face of these deficiencies in the ALJ's opinion, the Commissioner argues that the ALJ also discounted Drs. Clifford's and Jones' opinions because they were inconsistent with Plaintiff's testimony, "which 'was not indicative [of] any significant shoulder issues' during the relevant period[.]"   (ECF No. 13, PageID.1411) (quoting PageID.39). Specifically, the Commissioner points to Plaintiff's testimony that "he did not 'develop shoulder problems' until 2022[.]" (*Id.*) (quoting PageID.84-85).  A full reading of the cited testimony, however, demonstrates that – in some respects – Plaintiff appears to have been merely going along with a series of leading questions, rather than affirmatively recalling detailed information:

> Q.   Were you – did you start to develop shoulder problems then in 2022 at some point?
>
> A.   Yes.
>
> Q.   Okay.  One shoulder?  Both shoulder[s]?  Can you just – I'm not going to have you go into a ton, just –
>
> A.   Well, it –
>
> Q.   – a general idea.
>
> A.   It started with the right shoulder, and then the right shoulder gave out, and then the left shoulder gave out.
>
> Q.   Okay.
>
> A.   So I had problems with my one shoulder, and then I – because you had – it hurt, and you kind of use the other one a little more, so that one took the brunt of two.  And now they both are bad.
>
> Q.   Okay.  But to your recollection it sounds – what sounds – it sounds accurate that about February of 2022 is when –
>
> A.   Yes.
>
> Q.   – you started noticing shoulder problems?

14

A.     Yes, sir.

(PageID.85).

Plaintiff's testimony – which is somewhat vague, at any rate – is belied by the medical evidence, which, as set forth above, clearly demonstrates that Plaintiff complained of shoulder pain at least as early as April 2018, when he was diagnosed with tendinitis of the left rotator cuff.  (PageID.524).  Moreover, Dr. Drewry diagnosed Plaintiff with rotator cuff tear arthropathy of both shoulders in February 2021.  (PageID.431).  And, the February 2022 MRI records detailed above, *see supra* at 12, also specifically reference Plaintiff having complained about his shoulder pain for the prior nine months.  (PageID.420-21).  Common sense suggests that contemporaneous medical records documenting Plaintiff's complaints and the seriously-impaired condition of his shoulder at the time in question are more reliable than his vague testimony in response to leading questions several years later.

Finally, the Commissioner argues that the state agency physicians' "opined reaching limitations were inconsistent with the evidence of Plaintiff's daily activities."  (ECF No. 13, PageID.1411).  In making this argument, the Commissioner tacitly concedes that the ALJ did not rely on Plaintiff's daily activities in discounting the medical opinions at issue.  (*Id.*) (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) for the proposition that "the ALJ's decision should be read as a whole").  Moreover, close examination of the evidence cited by the ALJ reveals that the premise of the Commissioner's argument is flawed.  For instance, whereas the ALJ wrote that Plaintiff lived independently, performed household chores, and engaged in other activities "without any significant difficulties" during the relevant period, Plaintiff's function report indicates

15

that he lived with friends, his girlfriend did the cleaning, and he had difficulty reaching because of his shoulder pain.  (*Compare* PageID.39 with PageID.298-305).  Thus, the Court is not persuaded that, given the other issues with the ALJ's evaluation of the medical evidence, the Commissioner may rely on the ALJ's characterization of Plaintiff's daily activities as a sufficient basis to discount the medical opinions at issue.

All told, while the medical evidence of record is relatively limited, the probative evidence discussed above appears consistent with and supportive of the state agency physicians' opinions, and the ALJ improperly discounted those opinions based on a mistaken belief about when some of the most critical records were generated.  As a result, the ALJ's rationale for discounting the opinions of these physicians is not supported by substantial evidence.[10]  *See Bethany L. v. Comm'r of Soc. Sec.*, No. 24-10402, 2025 WL 310664, at *7, n. 6 (E.D. Mich. Jan. 10, 2025) ("the existence of substantial evidence alone does not excuse the ALJ's failure to provide a sufficient rationale for the reviewing court to assess") (citing *Hardy*, 554 F. Supp. 3d at 907-09).  Thus, for all of these reasons, remand is required.

### E.    Conclusion

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 13)**; **GRANTS** Plaintiff's Motion for Summary Judgment

---

[10] Lastly, the ALJ's errors in evaluating the opinions of the state agency physicians are not harmless.  Both Dr. Clifford and Dr. Jones found that Plaintiff was limited to occasional reaching overhead and laterally bilaterally.  (PageID.104-08, 116-18).  Plaintiff asserts that the jobs identified by the ALJ at Step Five – order clerk, hand packer, and inspector – all require frequent reaching, meaning that Plaintiff could not perform them if he was limited to only occasional reaching.  (ECF No. 11, PageID.1396-97).  The Commissioner does not challenge this argument.

**(ECF No. 11)**; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case

to the ALJ for further proceedings consistent with this Opinion and Order.

      **IT IS SO ORDERED.**

Dated: March 16, 2026                  s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 16, 2026.

                                 s/Eddrey O. Butts
                                 EDDREY O. BUTTS
                                 Case Manager